**BLOCK, Senior District Judge:**

This case began in Virginia state court. It was then removed to federal court as related to a bankruptcy proceeding, *see* 28 U.S.C. §§ 1334(b), 1452(a), and transferred to the Eastern District of New York because the bankruptcy proceeding is pending here. *See In re Va. True Corp.*, Case No. 19-42769 (Bankr. E.D.N.Y. filed May 3, 2019). It was not, however, transferred to the Bankruptcy Court because it is not a core proceeding and must therefore be adjudicated by a district court. *See* 28 U.S.C. § 157(c).

The Court previously denied a motion to remand. *See Cipollone v. Applestein*, 2022 WL 307051 (E.D.N.Y. Feb. 2, 2022). Having decided to keep the case, the Court must now address two motions to dismiss filed by the defendants. For the following reasons, the motions are granted in part and denied in part.

**I**

The following facts are drawn from the complaint and are, for present purposes, taken as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

In 2017, Howard Kleinhendler and Benito Fernandez formed Virginia True

Corporation to acquire and develop a 1,000-acre site along the Rappahannock River in Virginia.  Shortly thereafter, Kleinhendler and Fernandez approached Anthony and Dominick Cipollone to solicit a substantial investment in the property.

On April 17, 2017, the Cipollones entered to a "Stockholders' Agreement" with Virginia True, Kleinhendler, and Fernandez.  The Cipollones agreed to pay $5 million in exchange for a total of 832 shares in Virginia True.  The deal gave the Cipollones a 32% ownership interest in the company, with Kleinhendler and Fernandez collectively retaining a 68% interest.

To protect the Cipollones' investment, the Stockholders' Agreement included a buy-back provision, which gave the Cipollone's the right to cash out their interest on demand.  The provision gave Kleinhendler and Fernandez the option of paying the Cipollones $5 million in cash from either their own funds or through Virginia True.  Absent a cash tender, Virginia True agreed to execute a $5 million promissory secured by a mortgage on its real estate.  The Cipollones relied on the buy-out provision and would not have made their investment without it.

Kleinhendler and Fernandez then set about acquiring the property, which was then owned by Diatomite Corporation of America ("Diatomite").  Diatomite's principal, Allan Applestein, happened to be a longtime client of Kleinhendler, a

3

lawyer.

On the same day the Shareholders' Agreement was executed, Diatomite agreed to sell the property to Virginia True for $12 million.  The purchase price was funded by the Cipollones' $5 million investment and a $7 million promissory note.  Although the note was unsecured, Virginia True (by Kleinhendler and Fernandez) and Diatomite (by Applestein) entered into a "Side Letter Agreement" under which Virginia True promised not to transfer or encumber the property "without the prior written consent of Allan Applestein and his legal counsel." Compl., Ex. D.  The Cipollones had no knowledge of the Side Letter Agreement.

Concerned about the progress of the development, the Cipollones invoked the buy-back provision on September 28, 2018.  Receiving no response from Kleinhendler or Fernandez, the Cipollones filed a state-court action against Virginia True.  Shortly thereafter, Virginia True delivered a $5-million promissory note secured by a deed of trust (the equivalent of a mortgage under Virginia law) on the property.  It is undisputed that the note and deed of trust satisfied Virginia True's obligations under the buy-back provision.  Accordingly, the Cipollones surrendered their shares on December 11, 2018.

Virginia True did not pay the note when it came due on April 27, 2019. Instead, it filed for bankruptcy six days later.  Although the Cipollones filed a $5

4

million proof of claim in the bankruptcy proceeding, Virginia True initiated an adversary proceeding to void the note and deed of trust.  Diatomite and Applestein were granted leave to intervene in the adversary proceeding in support of Virginia True's position.  It was during a telephone call with Applestein and Diatomite's counsel in the bankruptcy proceeding that the Cipollones learned about the Side Letter Agreement for the first time.  They also learned that Diatomite and Applestein had given $500,000 from the sale of the property to Kleinhendler as a "personal loan."  The Cipollones then filed the complaint that has, as explained above, made its way to this Court.

## II

The Cipollones' complaint asserts three claims: (1) fraudulent inducement to contract against Kleinhendler and Fernandez, (2) tortious interference with contract against Diatomite and Applestein, and (3) conspiracy against all four defendants.  Kleinhendler moves to dismiss for failure to join Virginia True as a necessary and indispensable party.  He further moves to dismiss the fraudulent inducement claim for failure to state a claim.  For their part, Diatomite and Applestein move to dismiss the claim for tortious interference for failure to state a claim.  All three move to dismiss the conspiracy claim for failure to state a claim.[1]

---

[1] The fourth defendant—Fernandez—has not appeared.

The Court addresses those arguments in turn.

### A.    Failure to Join Virginia True

Under Federal Rule of Civil Procedure 19, a party is necessary and must be joined if

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i)   as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii)  leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Subsection (A) clearly does not apply here.  The Cipollones have sued Kleinhendler (and others), not Virginia True.  Should they prevail, nothing would prevent the Court from entering judgment against Kleinhendler for whatever damages they establish.

Nor does subsection (B) apply.  Virginia True has not actually asserted any interest in the outcome of this case.  It is true that Kleinhendler may claim indemnification from the company but he has yet to do so, although he could presumably assert a third-party claim against it in this case.

6

In any event, Virginia True's absence does not impair its ability to protect its interest. Even if Kleinhendler is held liable to the Cipollones, Virginia True will be free to offer any reason why it should not be required to indemnify him if and when he asserts a claim. By the same token, there is no risk that Kleinhendler will face multiple or inconsistent obligations if Virginia True is not joined as a party.

**B.     Fraudulent Inducement**

Under Virginia law, "[a] false representation of a material fact, constituting an inducement to the contract, on which the purchaser had a right to rely, is always ground for rescission of the contract." *Abi-Najm v. Concord Condo., LLC,* 699 S.E.2d 483, 489 (2010) (internal quotation marks omitted). "Fraud in the inducement of a contract is also ground for an action for damages." *Id*. (internal quotation marks omitted).[2]

A claim for fraudulent inducement requires that there "must be positive statements of fact, made for the purpose of procuring the contract; that they must be untrue; that they are material; and that the party to whom they were made relied upon them, and was induced by them to enter into the contract." *Brame v. Guarantee Fin. Co.*, 124 S.E. 477, 481 (Va. 1924) (internal quotation marks omitted). The key issue in this case is whether Kleinhendler and Fernandez's

---

[2] The parties agree that Virginia law governs.

failure to disclose the Side Letter Agreement to the Cipollones was a "positive misstatement of fact."

The issue is a close one.  Nondisclosure is actionable only if there is a duty to disclose.  *See Doe v. Baker*, 857 S.E.2d 573, 656 (Va. 2021).  The Court agrees with Kleinhendler that merely soliciting an investment does not create a fiduciary or similar relationship normally associated with a duty to disclose.  *See id.*; *accord Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1483 (2d Cir. 1995) ("Such a duty ordinarily arises where the parties are in a fiduciary or other relationship signifying a heightened level of trust.").  Had the Stockholders' Agreement resulting from the solicitation simply given the Cipollones shares of Virginia True in exchange for $5 million, the Court's inquiry would likely be at an end.

However, the Stockholders' Agreement also included a promise to buy back those shares with either cash or a promissory note secured by a deed of trust.  Apart from the requirement that the Cipollones give written notice within a certain time, that promise was unconditional.  Yet unbeknownst to the Cipollones, Virginia True could not perform that promise without first obtaining Applestein's permission.

Those allegations take this case out of the realm of simple silence.  Even

8

absent a fiduciary relationship, a duty to disclose exists "when disclosure would be necessary to clarify information already disclosed, which would otherwise be misleading." *Doe*, 857 S.E.2d at 656 (internal quotation marks omitted); *accord Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) ("[O]nce a party has undertaken to mention a relevant fact to the other party it cannot give only half of the truth[.]"). In the same vein, "[c]oncealment of a material fact by one who knows that the other party is acting upon the assumption that the fact does not exist constitutes actionable fraud." *Allen Realty Corp. v. Holbert,* 318 S.E.2d 592, 597 (Va. 1984); *accord Brass*, 987 F.2d at 150 (recognizing a duty to disclose "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge" (internal quotation marks omitted)).

Those circumstances obtain here. Kleinhendler and Fernandez's inclusion of the buy-back provision in the Stockholder's Agreement carried with it a representation—albeit implicit—that Virginia True could perform its obligations under the provision. To prevent that representation from being misleading, and to correct the entirely reasonable misimpression that it was unconditional, Kleinhendler and Fernandez had to disclose that the company could not encumber the property without Applestein's consent.

9

In that sense, this case in akin to one involving fraud based on a contractual promise. An unfilled promise does not ordinarily constitute fraud. "Were the rule otherwise, every breach of contract could be made the basis of an action in tort for fraud." *Abi-Najm*, 699 S.E.2d at 490 (internal quotation marks omitted). If, however, a party to a contract "represents his state of mind as being one thing when in fact his purpose is just the contrary, he misrepresents a then existing fact." *Id*. (internal quotation marks and alteration omitted). Here, Kleinhendler and Fernandez made a representation about Virginia True's ability to perform, but the import of the representation is the same. *See Wild Bunch, SA v. Vendian Entm't, LLC*, 256 F. Supp. 3d 497, 506 (S.D.N.Y. 2017) ("It is one thing to promise to perform a contract. It is quite something else to induce someone to enter a contract by lying as to one's current financial condition, present ability to perform, and the like."). Accordingly, the Court holds that the failure to disclose the Side Letter Agreement is actionable.

Kleinhendler briefly argues that no damages flowed from the failure to disclose because Virginia True eventually performed its contractual obligations. This misunderstands the nature of fraudulent inducement. As its name suggests, the tort provides a remedy to one who has entered into a contract under false pretenses by placing him in the position he would have been in had he known the

10

truth. The Cipollones allege that they would not have invested in Virginia True if they had known about the Side Letter Agreement. Therefore, their remedy is not measured by the benefit of their bargain.

For these reasons, Kleinhendler's motion to dismiss the fraudulent inducement claim is denied.

**C.    Tortious Interference**

"In Virginia, the elements of a claim for tortious interference with contractual relations are typically recited as (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Schaecher v. Bouffault*, 772 S.E.2d 589, 602 (Va. 2015). It follows from the third element that there can be no claim for tortious interference if the contract has been performed.

As noted, it is undisputed that Virginia True eventually performed its contractual obligations by delivering a note and deed of trust to the Cipollones. They nevertheless argue that their rights were "in jeopardy" as soon as the Side Letter Agreement was signed, and that they would not have invested in Virginia

True had they known about it. But tortious inference is meant to remedy an *actual* breach of contract, not a potential one. Moreover, the remedy for tortious interference is the value of the contract plus any consequential damages. *See* Restatement (Second) of Torts § 774A(1). Thus, damages are measured by the breach of the contract and, unlike fraudulent inducement, not by the position plaintiff would have been in had the contract never existed.

 The Cipollones further argue that Applestein and Diatomite should be estopped from claiming the contract was performed because they are arguing that it should be voided in the bankruptcy proceeding. The Cipollones presumably mean to invoke judicial estoppel, which "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *N.H. v. Me.*, 532 U.S. 742, 749 (2001) (alterations omitted). There is, however, no contradiction in arguing that a contract has a been performed but should be voided under bankruptcy law, under which the avoidance of a valid contract is commonplace. In any event, Applestein and Diatomite's argument has not yet prevailed in the bankruptcy proceeding.

**D. Conspiracy**

 Since the Court has held that the Cipollones have alleged the elements of fraudulent inducement, it must address their conspiracy claim because Applestein

12

and Diamonite could potentially be liable for that tort under a conspiracy theory.

Under Virginia law, "[a] common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means." *Com. Bus. Sys., Inc. v. Bellsouth Servs., Inc.*, 453 S.E.2d 261, 266 (Va. 1995). In addition, Virginia provides a statutory remedy for anyone damaged by "a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business." *Dunlop v. Cottman Transmissions Sys., LLC*, 754 S.E.2d 313, 317 (Va. 2014).

Applestein and Diatomite argue that the Cipollones cannot maintain a conspiracy claim because Kleinhendler was an officer of both Virginia True and Diatomite. While it is true that an agent and his principal cannot conspire with one another, *see Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 466 S.E.2d 382, 387 (Va. 1996), the complaint fairly alleges that Kleinhendler was not acting *solely* as an agent; it alleges, for example, that he personally received a loan out of the proceeds of the property sale. Moreover, the Court has not found any cases holding that two corporations sharing one officer cannot conspire with each other through other, separate agents. Finally, excluding the corporate entities still leaves three individuals—Fernandez, Kleinhendler, and Applestein—alleged to

13

have conspired with each other.

Finally, Applestein and Diatomite argue that a statutory conspiracy requires an allegation that the conspirators prevented or hindered the plaintiff from performing some lawful act. One provision of the statute includes that element, *see* Va. Code § 18.2-499(A)(ii), but the provision invoked by the Cipollones does not, *see id.* § 18.2-499(A)(i).

## III

For the foregoing reasons, the defendants' motions to dismiss are granted in part and denied in part. The Cipollones' claim for tortious interference with contract is dismissed. The case will proceed on their claims for fraudulent inducement to contract and conspiracy to commit that tort.

**SO ORDERED.**

     /S/ Frederic Block     
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
February 6, 2023